Ileana CURDE, Plaintiff,

v.

XYTEL CORPORATION, Defendant.

No. 94 C 7686.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 24, 1995.

Charles Anthony Packard, Nisen & Elliott, Chicago, IL, Richard H. Trais, Chicago, IL, for plaintiff.

Carol Berlin Manzoni, Kari J. Sperstad, Kimberly Grossman Metrick, Ross & Hardies, P.C., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Ileana Curde brings this two-count complaint against Defendant Xytel Corporation, alleging that she endured a sexually harassing environment while working for Xytel, and that she was constructively discharged because of her complaints of harassment. Defendant moves for summary judgment on both counts, arguing that Curde has failed to introduce evidence demonstrating that she endured a hostile work environment at the company, or that she was forced to quit her employment because of her complaints. Defendant also moves to strike certain portions of Plaintiff's submissions made in response to the motion for summary judgment. For the reasons set forth below, the defendant's motion to strike and its motion for summary judgment are denied.

## I. Background[1]

Plaintiff began her employment with Xytel in December 1992 as one of two computer assisted design ("CAD") operators. The other CAD operator in the division, Recto Santos, worked in close proximity to Curde. During a two-week period in December 1992, Santos placed his hands on Curde's hands and face when helping her become acquainted with her position. Curde complained of this behavior to her supervisor, Ms. Artie Patel, who referred the matter to the group manager, Mr. Vinod Patel (no relation to Ms. Patel). Mr. Patel immediately spoke with Santos about Curde's complaints, and the touching stopped.

Plaintiff contends, however, that Santos continued to harass her and make her job more difficult because she was a woman. She claims that he withheld information she needed to complete her assignments, removed drawings and computer discs from her desk without her knowledge, erased files from her computer without her permission, obstructed her ability to utilize the shared printer, and told co-workers not to help her.[2] She also claims that Santos verbally harassed her by (1) telling her that he hated women and only wanted to use them for sex, (2) making sarcastic remarks after she returned from lunch meetings with her male friends, and implying that she actually had gone to have sex with them, (3) repeatedly asking Curde why she didn't move into the house of a male co-worker with whom she ate lunch, (4) asking her personal questions about her family, boyfriend, and former husband, and (5) one time in August 1993, yelling at her in a threatening manner "Fuck you, I don't trust you!"[3] In addition, Santos is also alleged to have repeatedly blocked access to Curde's desk with his garbage can.

Although Ms. Patel was not present for the great majority of these incidents, Plaintiff contends that she complained several times to Ms. Patel and Mr. Patel about Santos's conduct, but they refused to take any action. Consequently, in March 1994 Plaintiff went to Xytel's president, Bob Lo, to complain about the harassment. Lo held a joint meeting with Curde, Santos, and their supervisors, at which time Lo decided to move Curde and her group to a new location in the building so that Santos and Curde would be seated apart from each other and another supervisor would always be present. However, Curde claims that in this new arrangement she would still be required to sit adjacent to Santos, and that the new supervisor would not be present for much of the day since his duties frequently required him to be out of the office area. In addition, Curde claims that Lo said if she couldn't work together with Santos, she could resign. Curde reported to her new assignment for only a short period of time[4] before concluding that she could not endure the conditions any longer. She left Xytel and filed this lawsuit, claiming that she was exposed to a hostile work environment, and constructively discharged because of her complaints of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1).

Defendant now moves for summary judgment on both counts, arguing (1) that Curde has failed to demonstrate that she was exposed to a hostile work environment, (2) that Xytel's prompt corrective action bars her claim against the company, and (3) that Curde's employment conditions were not so intolerable as to consider her constructively discharged.

---

1. As with most employment discrimination cases, the facts in this action are hotly disputed. However, we are able to glean the following factual discussion from the parties' submissions, and will denote contested issues where relevant.

2. Defendant maintains that most of these incidents were accidental or not very serious.

3. Plaintiff also claims that Santos criticized other women in the office for being overweight and unsightly, and that this harassment once occurred in the presence of Ms. Patel. However, Plaintiff does not contend that she actually heard these statements herself, but that others in the office told her of his remarks.

4. Defendant contends that Curde spent one-half of a day in the new arrangement, while Plaintiff asserts that she lasted one and one-half days.

## II.  Motion to Strike

█ We first address Xytel's motion to strike.  Defendant asks us to strike portions of the plaintiff's submissions in response to the motion for summary judgment on the ground that these statements do not comply with the requirements of General Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois ("Local Rule 12(M)" and "Local Rule 12(N)").  Local Rule 12(M) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law."  In response, Local Rule 12(N) requires the non-movant to submit "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references the affidavits, parts of the record, and other supporting materials relied upon."  In addition, Local Rule 12(N)(3)(b) requires the non-movant to submit "a statement, consisting of short numbered paragraphs, of any additional facts that requires the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon."  If either the movant or the non-movant fails to properly respond to a material fact set forth in the opponent's statement, such fact will be deemed admitted.  Local Rules 12(M), 12(N)(3)(b).  In other words, "if the party opposing summary judgment fails to respond to the facts set out by the movant, the court may assume those facts to be admitted and use them in determining whether the movant is entitled to judgment as a matter of law." *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 389 (7th Cir.1995).  Xytel contends that Plaintiff's responses to paragraphs 4, 7, 8, 9, 11, 13, and 14 of its Local Rule 12(M) statement are improper because they contain additional, qualifying information not permitted by the rule, and thus should be stricken. Defendant also argues that paragraphs 17, 18, and 19 of Plaintiff's Local Rule 12(N)(3)(b) statement of additional facts should be stricken because Curde's affidavit

in support of these statements is contradicted by her own deposition testimony.

█ To be sure, we have the authority to strike the submissions of the parties if they violate the requirements of Local Rules 12(M) and 12(N).  *See Rosemary B. v. Board of Educ. of Community High Sch. Dist. No. 155,* 52 F.3d 156, 158–59 (7th Cir.1995).  However, we do not believe that Curde's submissions deserve such treatment.  The additional factual assertions made in paragraphs 4, 7, 8, 9, 11, 13, and 14 of Curde's 12(N) response do not directly contradict the affirmance or denial that she makes to each corresponding 12(M) statement;  rather, these additional statements either clarify the extent to which Plaintiff agrees with the Defendant's statement, or point out exactly how she disagrees with it.  For example, in response to the defendant's claim that Santos "neither made any statements of a sexual nature to Plaintiff nor engaged in any conduct of a sexual nature" after December 1992, Defendant's 12(M) ¶ 7, the plaintiff denies that Santos stopped making sexual comments or remarks after December 1992, and affirmatively asserts that Santos continued to engage in sexually harassing behavior after that time.  Her response then details Santos's sexually related and non-sexually related harassment of her after December 1992.  While such information could have been included in her statement of additional facts, we do not believe that its placement in the responsive section of her 12(N) statement justifies granting a motion to strike.  Similarly, in her response to paragraph 8, Curde states that she partially agrees with the nine statements of fact contained in Defendant's 12(M),[5] but disagrees with some of the characterizations or quotations.  We recognize that parties are not permitted to admit the veracity of a 12(M) statement, and then in the same breath qualify or contradict their admission with additional facts.  *See Callahan v. City of Rockford,* No. 90 C 20090, 1994 WL 92391, at *4 (N.D.Ill. Mar. 4, 1994), *aff'd,* 41 F.3d 1510, 1994 WL 636995 (7th Cir.1994). However, in this case we do not read any of Plaintiff's additional statements as contradic-

---

**5.** We note that Defendant's statement itself pushes the limit of compliance with Local Rule 12(M)'s requirement that a statement consist of *short* numbered paragraphs.

tory, but as explanatory of her responses. Accordingly, we deny Defendant's motion to strike portions of paragraphs 4, 7, 8, 9, 11, 13, and 14.

■ Defendant also challenges the plaintiff's statements of additional facts in paragraphs 17–19 of her 12(N) response. Xytel contends that these statements, and Curde's affidavit supporting them, are directly contradicted by Plaintiff's prior deposition testimony, and thus cannot be used to argue that material issues of fact remain in dispute. In this circuit, "[w]here deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken." *Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 379 (7th Cir.1995) (quoting *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67–68 (7th Cir.1995)); *see also Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). Again, however, we find that Plaintiff's submissions do not fall within this rule.

In paragraph 17, Plaintiff asserts that when she would "go out to lunch with male co-workers Santos would repeatedly ask when they had gone and sarcastically reply that Plaintiff had gone out to have sex, not eat lunch." Defendant correctly points out that neither Plaintiff's affidavit nor her deposition testimony supports the contention that Santos verbally accused her of a mid-day tryst; rather, both sources indicate that Santos *implied* that Curde was having sexual relations with other men. Curde Affidavit ¶ 5; Trans. at 150–52.[6] In response to the motion to strike, however, Plaintiff concedes this point and effectively amends her 12(N) statement to comport with her testimony. Thus, because Plaintiff has adequately clarified paragraph 17, we see no conflict between this statement and her prior testimony and therefore decline to strike the statement from our consideration.

Defendant next challenges paragraph 18, which states that Santos asked Curde several times why she did not move in with her co-worker Frank Calderone. Xytel argues that this statement is inconsistent with Curde's deposition testimony, in which she stated that Santos made this remark "one time." Trans. at 152. However, the deposition statement referred to by Xytel was just one sentence in a two-paragraph answer. Curde was never asked how many times Santos made such a statement, and only a few sentences later in the deposition she reaffirmed her claim that Santos constantly harassed her. *Id.* Reading the deposition testimony in context, we cannot conclude that Curde's affidavit contradicts her prior statement.

Finally, Xytel challenges Curde's statement in paragraph 19 that Vinod Patel failed to take any action after she complained of Santos's harassment. Defendant argues that Curde directly contradicted this statement in her deposition, in which she claimed that Mr. Patel spoke with Santos about his physical harassment of Curde and made him stop. However, it is clear from Curde's response to the motion to strike that paragraph 19 refers *only* to alleged inaction by Mr. Patel after the December 1992 touching incidents were resolved. As there is no apparent contradiction between the plaintiff's affidavit and her deposition testimony on this matter, we deny Xytel's motion to strike.

### III. Motion for Summary Judgment

■ Having resolved the challenges to Curde's submissions, we move on to Xytel's request for summary judgment. A motion for summary judgment will be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In addition to affirmatively presenting evidence on a material issue, the movant may also satisfy

---

**6.** "Trans." refers to the transcript of Curde's deposition.

this burden by pointing out "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings; rather, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In ruling on a motion for summary judgment we read the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Corp.*, 33 F.3d 813, 815 (7th Cir.1994), and refrain from making credibility determinations, *see Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992).

▮ Defendant first argues that Curde has failed to introduce sufficient evidence from which a reasonable factfinder could conclude that her work environment was hostile enough to violate Title VII. To prevail on her hostile work environment claim, Curde must demonstrate that Santos's conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create a hostile work environment." *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 708 (7th Cir.1995) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)). In determining whether an environment is sufficiently "hostile" or "abusive" to implicate Title VII, we examine:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris v. Forklift Sys., Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). In addition, the victim must subjectively perceive the conditions of employment as abusive. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 444 (7th Cir.1994).

▮ Xytel claims that, at best, Curde can demonstrate that Santos touched her in a sexually offensive manner during a two-week period in December 1992, and that for the following fourteen months she was subject to

sporadic, non-sexual conduct of an annoying nature. According to Xytel, only conduct of a sexual nature can provide the basis for a Title VII hostile environment claim, and thus the plaintiff cannot prevail by showing only two weeks of such conduct over a fifteen month period. However, Defendant's major premise—that only conduct of a sexual nature can implicate Title VII—is incorrect. Rather, so long as the plaintiff's "working conditions have been discriminatorily altered" because of her gender, Title VII is implicated. *See Harris*, —— U.S. at ——, 114 S.Ct. at 372 (Scalia, J., concurring); *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir.1994) (articulating Title VII inquiry as "whether the plaintiff was, because of her sex, subjected to such hostile, intimidating, or degrading behavior, verbal or nonverbal, as to affect adversely the conditions under which she worked"). To be sure, at least two cases from the Seventh Circuit Court of Appeals state that a hostile environment claim must include an allegation that the harassment came "in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature." *Rennie v. Dalton*, 3 F.3d 1100, 1107 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994); *Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235, 1238 (7th Cir.1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990). However, neither of these cases directly addressed the question of whether harassing conduct of a non-sexual nature is actionable under Title VII. We believe the most recent statements by the Seventh Circuit dispel the notion that hostile environment claims are limited solely to situations involving conduct of a sexual nature; rather, actionable harassment "encompasses *all forms of conduct* that unreasonably interfere with an individual's work performance or create[ ] an intimidating, hostile, or offensive work environment." *R.R. Donnelley & Sons*, 42 F.3d at 443 (citing *Meritor*, 477 U.S. at 64, 106 S.Ct. at 2404) (emphasis added); *see Carr*, 32 F.3d at 1009.[7]

---

7. We suspect that Xytel's argument stems from the same ambiguity observed by Judge Sharp in

*Vandeventer v. Wabash Nat. Corp.*, 887 F.Supp. 1178, 1181 (N.D.Ind.1995):

Thus, the fact that Curde complains of only a limited amount of sexually related conduct by Santos is not dispositive. So long as she puts forth sufficient evidence from which a reasonable jury could conclude that she endured a hostile work environment because of her gender, she can withstand summary judgment. *Cf. Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 431 (7th Cir.1995) (concluding no reasonable jury could find that supervisor's remarks created hostile work environment). This she has done. Curde claims that after the touching incidents of December 1992, Santos regularly obstructed her work by taking her computer discs and drawings, and withholding information about projects they were working on together. In addition, through innuendo Santos accused Curde of having sex with other employees during her lunch break, and inquired as to why she did not move in with another co-worker. Santos is also accused of making derogatory remarks about women, and on one occasion directing abusive, threatening language at Curde.[8] While the frequency of Santos's verbal attacks on Curde is unclear, the plaintiff maintains that he regularly treated her in this manner from December 1992 to March 1994. Thus, we are not faced with a case involving relatively infrequent remarks from a rude or boorish co-worker, *e.g., Baskerville,* 50 F.3d at 430; rather, the plaintiff complains of relatively serious acts of harassment over a prolonged period of time. Finally, given the extended period of time over which the harassment is alleged to have occurred and the regular contact between Santos and Curde, the fact that Curde cannot remember Santos's exact words or the timing of several of the alleged incidents is not fatal to her claim. *See Dey v. Colt Const. & Dev. Co.,* 28 F.3d 1446, 1456–57 (7th Cir.1994). Accordingly, we cannot say as a matter of law that Plaintiff has failed to produce sufficient evidence from which a jury

could find that a hostile environment existed at Xytel.

Defendant next argues that summary judgment should be entered because the plaintiff has failed to show that Xytel was at fault in not remedying the alleged hostile environment. To hold an employer liable for the acts of a co-worker, a plaintiff must prove that the employer knew or should have known of the employees' acts and failed to take appropriate remedial action. *R.R. Donnelley & Sons,* 42 F.3d at 446; *see also Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408 (employer liability under Title VII governed by general principles of agency law). Although Santos's physical touching of Curde ceased after Mr. Patel censured him in December 1992, Curde testified in her deposition that Santos continued to treat her discriminatorily because of her gender. Further, the plaintiff claims that she informed both Ms. Patel and Mr. Patel of these acts, and that they failed to take any action until after she approached Xytel's president with her complaints. Defendant has not shown that this evidence is insufficient to support a Title VII claim, and thus summary judgment cannot be granted.

Finally, Xytel moves for summary judgment on the plaintiff's constructive discharge claim, arguing that Curde has not presented sufficient evidence from which to conclude that the environment at the company forced her to quit. "To obtain a remedy for constructive discharge, all [Curde] ha[s] to show [is] that the discrimination to which she was subjected was sufficiently serious to cause a reasonable person to quit." *Carr,* 32 F.3d at 1011–12. Xytel contends that because its president offered to move Curde to a new location in the office where she would not have to sit next to Santos, and where both employees would always be under the eye of a new supervisor, the company cannot

---

The words "sex" and "sexual" create definitional problems because they can mean either "relating to gender" or "relating to sexual/reproductive behavior." The two are not the same, but are certainly related and easily confused. Title VII only recognizes harassment *based* on the first meaning, although that frequently *involves* the second meaning. (emphasis in original).

8. The existence of physical contact between Santos and Curde, as well as the threatening nature of Santos's remarks during his outburst, clearly distinguishes this case from *Baskerville,* where the majority relied on the absence of these conditions in concluding that no hostile environment existed. 50 F.3d at 431.

be shown to have made the plaintiff's employment conditions intolerable. However, Curde points out that even under this new arrangement she would still be forced to sit in close proximity to Santos. In addition, Curde claims that the supervisor assigned to the area would frequently be away from the office because of his duties. Moreover, the plaintiff asserts that Xytel president told her that if she could not work with Santos, she could hand in her resignation. In the final analysis, Curde's testimony might not convince a jury that she suffered such intolerable conditions that a reasonable person would have quit; nonetheless, we conclude that she has presented sufficient evidence to raise a genuine dispute over whether the conditions of her employment, and the proposed remedial action, forced her to resign. Accordingly, we deny Defendant's motion for summary judgment on Count II.

### IV. Conclusion

For the reasons set forth above, the defendant's motion to strike and its motion for summary judgment are denied. It is so ordered.