Raymond WILLIAMS, Plaintiff,

v.

Andrew CUOMO, Secretary of the United States Department of Housing and Urban Development, Defendant.

No. 94 C 5826.

United States District Court,
N.D. Illinois,
Eastern Division.

May 2, 1997.

Raymond Williams, Summit, pro se.

Young B. Kim, United States Attorney's Office, Chicago, for Defendant.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Andrew Cuomo, Secretary of the United States Department of Housing and Urban Development's

("HUD"), motion for summary judgment against plaintiff Raymond Williams.[1] For the reasons that follow, the court grants the motion for summary judgment.

## I. *BACKGROUND* [2]

Plaintiff Raymond Williams, who is black, worked as an economist in the Economic and Marketing Analysis Section ("EMAS") of HUD's Chicago regional office from July 31, 1989, until he was fired on May 11, 1990. Williams was hired by HUD on the recommendation of Joseph P. McDonnell, Regional Economist for EMAS and Williams' immediate supervisor, who had reviewed Williams' application and interviewed Williams. After he was hired, Williams was put on a one-year probationary period, the purpose of which was to allow HUD to determine the quality of his actual performance. It appears that all new employees were put on such a probationary period.

Three other economists also worked in EMAS, but Williams was the only economist at his particular grade level and the only probationary employee under McDonnell. Williams did not go through a formal training program but received on-the-job training. McDonnell supervised and assigned work to Williams. Most of the work involved written assignments; therefore, McDonnell viewed the ability to communicate effectively in writing as necessary for successful performance. However, Williams' written work was of a lower quality than his pre-hire writing sample had indicated. McDonnell had to make extensive revisions to correct grammar, spelling, and statistical inaccuracies in Williams' work, even in less complex assignments.

On December 8, 1989, McDonnell gave Williams a blank copy of the form that McDonnell would use in February 1990 to review Williams' performance so that Williams would know the applicable perfor-mance standards and areas of review. On February 27, 1990, McDonnell gave Williams a written review setting forth the unaccepta-ble areas of his performance. The review stated that Williams' written work was unac-ceptable because it contained punctuation, spelling, and sentence structure errors, inco-herent content, unclear sentences, inaccurate comments, and inappropriate statements. The review also stated that Williams' perfor-mance was unacceptable because his analyses contained unsupported recommendations, technical inaccuracies, insufficient detail, and grammatical errors. Finally, the review stated that McDonnell was concerned about the timeliness in which Williams completed his assignments because of the extensive re-visions that had to be made of Williams' work.

Although McDonnell rated Williams' per-formance unacceptable, he did not fire Williams. Instead, he gave him a Notice of Opportunity to Improve. In the notice, McDonnell specified the areas that Williams needed to improve and suggested regular meetings between McDonnell and Williams to discuss Williams' progress. McDonnell, with the Office of Personnel Management, also developed a performance improvement plan for Williams. McDonnell was not re-quired to take either of these steps to help Williams.

McDonnell enrolled Williams in a HUD writing course and recommended that Williams meet with him on a regular basis to discuss Williams' assignments and progress. Williams attended the writing course and met regularly with McDonnell to discuss his work. However, McDonnell did not feel that Williams was making any progress despite these efforts to help Williams improve his performance. Rather, Williams' perfor-mance actually deteriorated. His written work continued to require extensive revisions and corrections. Moreover, on several occa-sions, Williams sent correspondence that con-tained errors to individuals outside EMAS in

---

**1.** This case was reassigned to this court from the calendar of Judge Brian Barnett Duff on October 10, 1996.

**2.** The facts are taken from HUD's Local Rule 12(M) statement of material facts, to which plain-tiff Raymond Williams failed to respond as re-quired by Local Rule 12(N). Moreover, Williams failed to submit his own statement of additional facts, pursuant to Local Rule 12(N). Thus, the facts set forth in HUD's Local Rule 12(M) state-ment are deemed admitted, and are the only facts on which the court bases its ruling. *See* section II.B., below.

McDonnell's name without McDonnell's approval or knowledge.

On April 5, 1990, in a probationary period report that McDonnell was required to complete about Williams, McDonnell recommended that Williams be fired because of his unacceptable performance. On May 1, 1990, McDonnell issued a formal notice firing Williams effective May 11, 1990. The person that Williams eventually hired to fill Williams' position also was black.

On April 20, 1990, after McDonnell recommended his termination but before he was fired, Williams contacted an Equal Employment Opportunity counselor to bring an informal complaint of discrimination. On May 11, 1990, the counselor held a final interview with Williams and told him of his right to file a formal complaint. On May 24, 1990, Williams filed a formal complaint of race discrimination with HUD. On June 28, 1990, HUD accepted for investigation whether Williams was fired during his probationary period because of his race and color. On May 19, 1991, HUD issued a Notice of Proposed Disposition finding no discrimination.

On June 8 and June 25, 1991, Williams requested a hearing before the Equal Employment Opportunity Commission ("EEOC"). On February 26, 1993, Williams temporarily withdrew his request for a hearing, and three months later, when he did not reinstate his request for a hearing, the EEOC remanded the case for a final agency decision. On June 20, 1994, HUD issued its final agency decision concluding that Williams was terminated because of his unacceptable performance and not because of his race or color.

On June 25, 1994, Williams received his right-to-sue letter from the EEOC. On September 23, 1994, he filed a lawsuit against HUD alleging race discrimination by HUD in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e–5. HUD now moves for summary judgment against Williams on his Title VII claim.

## II. *DISCUSSION*

### A. *Standard for deciding a motion for summary judgment*

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party presents a *prima facie* showing that it is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).

### B. *Local Rules 12(M) and 12(N)*

General Rule 12(M) of the United States District Court for the Northern District of Illinois ("Local Rule 12(M)") requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." Local Rule 12(M); *Curde v. Xytel Corp.*, 912 F.Supp. 335, 338 (N.D.Ill.1995). General Rule 12(N) of the United States District Court for the Northern District of Illinois ("Local Rule 12(N)") requires the non-movant to submit a concise response to the movant's Local Rule 12(M) statement that contains "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(N)(3)(a); *Curde*, 912 F.Supp. at 338.

In addition, Local Rule 12(N)(3)(b) requires the non-movant to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(N)(3)(b); *Curde,* 912 F.Supp. at 338. If either the movant or the non-movant in a summary judgment motion fails to respond properly to the facts set out by the opponent, the court deems those facts admitted. Local Rules 12(M), 12(N)(3)(b).

The Seventh Circuit has "consistently and repeatedly required strict compliance with" Local Rule 12(N). *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1316 (7th Cir.1995) (citations omitted). In *Midwest,* the court stated:

> Rule 12(N) is straightforward and clear; it requires each party opposing a motion for summary judgment to file (1) a response to each numbered paragraph in the moving party's statement, and (2) a statement of any additional facts that require denial of summary judgment. The rule therefore provides *the only acceptable means* of disputing the other party's facts and of presenting additional facts to the district court.

*Midwest,* 71 F.3d at 1317 (emphasis added). Thus, if a party chooses not to employ the means of opposing a motion for summary judgment set forth in Local Rule 12(N), the party "must suffer the consequences, harsh or not, of its default." *Id.*

 Williams did not file either a response to HUD's Local Rule 12(M) statement of facts or a statement of additional facts requiring summary judgment to be denied, as required by Local Rule 12(N). Because Williams is no longer represented by counsel,[3] HUD explicitly warned Williams of the consequences of failing to respond properly to its motion for summary judgment. (*See* Notice to Pl. Regarding the Consequence of Failing to Respond to Def.'s Mot. for Summ. J.) The notice explained the requirements of Local Rules 12(M) and 12(N) and set forth the actual text of the rules. Williams still failed to submit any kind of Local Rule 12(N) response or statement of additional facts. Thus, the court deems admitted the facts set forth in HUD's Local Rule 12(M) statement.

## C. *Race discrimination claim* [4]

HUD contends that it is entitled to summary judgment in this case because the material facts fail to support Williams' claim of race discrimination. The court agrees.

Williams can demonstrate race discrimination by HUD in one of two ways. He can present direct evidence of discrimination, *see Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985), or he can follow the "indirect, burden-shifting method of proof" set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). *Equal Employment Opportunity Comm'n v. Our Lady of the Resurrection Medical Center,* 77 F.3d 145, 147 (7th Cir.1996). Williams has presented no direct evidence of race discrimination, so he must rely on the burden-shifting method of proof set forth in *McDonnell Douglas* and *Burdine.* *See Our Lady of the Resurrection,* 77 F.3d at 148; *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 336 (7th Cir.1993).

Under the *McDonnell Douglas/Burdine* analysis, Williams has the burden to establish a *prima facie* case of race discrimination against HUD. If he is able to meet his burden, then the burden shifts to HUD to articulate a legitimate and nondiscriminatory reason for firing Williams. If HUD is able to do so, then the burden shifts back to Williams to show that HUD's articulated reason is merely a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 252–53, 101

---

**3.** Six lawyers in the last six months have withdrawn their appearances on behalf of Williams.

**4.** Williams actually claims race and color discrimination, based on the fact that he is black.

Since the court discerns no difference between race and color discrimination under Title VII, the court will refer to Williams' claim as one for race discrimination.

S.Ct. at 1093; *Hughes v. Brown,* 20 F.3d 745, 746–47 (7th Cir.1994).

### 1. Whether Williams can establish a *prima facie* case of race discrimination against HUD

To establish a *prima facie* case of race discrimination, Williams must show that "(1) he belongs to some protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) his employer treated similarly-situated employees outside his classification more favorably." *Hughes,* 20 F.3d at 746 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). HUD does not contest that Williams can establish the first and third elements of the *prima facie* case. However, HUD contends that Williams cannot satisfy the second and fourth elements.

#### a. *Whether Williams performed his job satisfactorily*

Williams has presented no evidence showing that he performed his job duties in EMAS in an acceptable manner. In contrast, HUD has presented substantial evidence indicating that Williams was unable to perform his job satisfactorily during his entire period of employment.

██ Because most of Williams' work involved writing, McDonnell viewed the ability to communicate effectively in writing as necessary for acceptable performance in Williams' position. Unfortunately, Williams' written work apparently left much to be desired. According to McDonnell's evaluation of Williams, Williams' written work required substantial revisions to correct punctuation, grammar, and spelling errors, statistical and technical inaccuracies, unsupported recommendations, and insufficient detail.

Even after McDonnell enrolled Williams in a writing course and met regularly with Williams about his assignments and writing, Williams still failed to improve. In fact, Williams' performance deteriorated because Williams continued to make the same mistakes and refused to follow instructions. Thus, when McDonnell was required to complete the probationary period evaluation form for Williams, he stated that Williams' performance had been unsatisfactory and had not improved, and recommended that Williams be fired.

Williams has not presented evidence that he performed his job satisfactorily, and HUD's evidence shows that Williams failed to perform his job satisfactorily. Thus, no question of fact exists regarding whether Williams performed his job satisfactorily; the evidence before the court shows unequivocally that he did not. Accordingly, Williams has failed to establish this element of his *prima facie* case.

#### b. *Whether HUD treated similarly situated non-black employees more favorably than Williams*

██ Again, Williams has presented no evidence that HUD, through McDonnell, treated him differently than similarly situated non-black employees. Williams was the only economist of his grade level and the only probationary employee under McDonnell. Thus, there really were no similarly situated employees under McDonnell. In addition, the economist McDonnell hired to replace Williams also was black, which defeats any inference that McDonnell preferred to have a non-black employee in Williams' job.

Williams has not presented any evidence that McDonnell treated similarly situated non-black employees more favorably than he treated Williams. Thus, Williams has failed to establish this element of his *prima facie* case.

Since Williams has failed to present sufficient evidence at least to raise a question of fact regarding whether he performed his job satisfactorily and whether McDonnell treated similarly situated non-black employees more favorably than Williams, he has failed to sustain his initial burden of establishing a *prima facie* case of race discrimination. Therefore, the court need not consider the remainder of *McDonnell Douglas'* burden-shifting analysis; nonetheless, it will.

### 2. Whether HUD has articulated a legitimate and nondiscriminatory reason for firing Williams

██ If Williams had sustained his burden of establishing a *prima facie* case of race

discrimination, the burden then would shift to HUD to articulate a legitimate and nondiscriminatory reason for its decision to fire Williams. It has done so.

Generally, an employee may be fired for "any reason ... not proscribed by a Congressional statute." *Kahn v. United States Secretary of Labor,* 64 F.3d 271, 279 (7th Cir.1995) (citation omitted). Here, HUD has stated that it fired Williams because of his unacceptable work performance. Nowhere does Congress proscribe firing for poor performance. In fact, "[e]mployers fire people every day[,] [and] [p]erhaps the most common criterion for choosing whom to fire is which employees perform a job better or worse than others." *Hedberg v. Indiana Bell Telephone Co.,* 47 F.3d 928, 934 (7th Cir.1995). Thus, HUD has met its burden of proffering a legitimate and nondiscriminatory reason for firing Williams.

### 3. Whether Williams can show that HUD's reason for firing him is a pretext for discrimination

Since HUD has sustained its burden of proffering a legitimate and nondiscriminatory reason for firing Williams, the burden shifts back to Williams to show that HUD's proffered reason is merely a pretext for race discrimination. Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). Thus, it is not enough for Williams to allege that HUD's decision to fire him was wrong; *see McCoy v. WGN Continental Broad. Co.,* 957 F.2d 368, 373 (7th Cir.1992); he must show that HUD is lying about firing him because of his unsatisfactory performance. *See Russell,* 51 F.3d at 68.

Williams has presented no evidence indicating that HUD's reason for firing him is a lie. He simply claims in his complaint and affidavit that he performed his duties satisfactorily, and that McDonnell's evaluation of him was wrong. However, to refute HUD's reason for firing him, Williams must do more than challenge McDonnell's judgment through his own self-serving assertions that McDonnell's evaluation of him was wrong and that he performed his job satisfactorily. *See Dale v. Chicago Tribune Co.,* 797 F.2d

458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Williams' perception that his performance was adequate is irrelevant; rather, it is the perception and judgment of McDonnell that is relevant in determining whether HUD's stated reason for firing Williams was a lie. *See id.* at 464–65.

█ Thus, Williams' claims that he was performing his job duties adequately are insufficient to counter McDonnell's assessment of his performance and to demonstrate that HUD's stated reason for firing him was a pretext for discrimination. *See Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1460 (7th Cir.1994) (citations omitted). Rather, Williams was required to present specific facts to refute HUD's factually supported claim that Williams' performance was deficient. *See Dey,* 28 F.3d at 1460; *Dale,* 797 F.2d at 464. Williams failed to do so.

█ In contrast, as the court already has discussed at length, HUD has presented plenty of evidence showing that it fired Williams not because of his race but because of his poor performance. Moreover, it was McDonnell who recommended that HUD hire Williams as an economist. When the same person hires and fires a plaintiff, an inference of nondiscrimination is created. *Our Lady of the Resurrection,* 77 F.3d at 151 ("The same hirer/firer has strong presumptive value").

In addition, rather than firing Williams immediately after Williams' poor performance evaluation in February 1990, McDonnell devised a performance improvement plan for Williams, enrolled Williams in a writing class, and met regularly with Williams to discuss his assignments and writing. McDonnell clearly attempted to help Williams improve his performance so that he could remain in his job and do it satisfactorily.

█ Last, after Williams was fired, McDonnell replaced Williams with someone who also was black. This fact alone creates the inference that Williams' race was not the reason for his being fired. If it were, it is unlikely that McDonnell, who would have

just fired Williams because he was black, would hire another black person.

These facts affirmatively show that Williams' race had nothing to do with his being fired. In the absence of any evidence to the contrary, Williams has not shown that HUD's articulated reason for firing Williams is a pretext for race discrimination. Thus, no question of fact exists regarding whether HUD discriminated against Williams because of his race; it did not.

### D. *Retaliation claim*

On a final note, HUD points out that although Williams did not present a retaliation claim to HUD or the EEOC or fully set forth such a claim in his complaint, Williams alleges that "McDonnell discharged Williams when he found that Williams was initiating E.E.O.C. charges." (Compl. at 4.) The same burden-shifting analysis that applies to a Title VII race discrimination claim also applies to a Title VII retaliation claim. *See, e.g., Dey,* 28 F.3d at 1448. Suffice it to say that as with the race discrimination claim, HUD has proffered a legitimate and nondiscriminatory reason, other than retaliation, for firing Williams, and Williams has not demonstrated that HUD's reason is a pretext for retaliation. Thus, no question of fact exists regarding whether HUD retaliated against Williams for filing an EEOC charge; it did not.

### III. *CONCLUSION*

For the foregoing reasons, the court grants HUD's motion for summary judgment, and enters judgment in favor of HUD and against Williams.