**Aurelia M. WHITE, Plaintiff–Appellant,**

**v.**

**State of OHIO, Betty Montgomery, Defendant–Appellee.**

No. 99–4359.

United States Court of Appeals, Sixth Circuit.

Jan. 18, 2001.

Before NORRIS and CLAY, Circuit Judges, and ROSEN,* District Judge.

CLAY, Circuit Judge.

Plaintiff, Aurelia White, appeals from the district court order granting Defendant, state of Ohio, summary judgment and dismissing Plaintiff's employment discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. For the reasons stated below; we AFFIRM.

## BACKGROUND

Plaintiff filed a four count complaint against her former employer, the state of Ohio Office of the Attorney General ("OAG"), on June 25, 1997, alleging: race discrimination in violation of Title VII and Ohio state law, Ohio Rev.Code §§ 4112.02 and 4112.99; intentional infliction of emotional distress in violation of Ohio common law; and violation of state and federal public policy under Title VII and Ohio Rev.Code § 4112.01. Defendant filed a motion for judgment on the pleadings. On

---

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

September 23, 1998, the district court granted in part Defendant's motion, dismissing Plaintiff's state law claims as well as Plaintiff's Title VII claim against the Attorney General, Betty D. Montgomery, in her individual capacity, but denied Defendant's motion as to Plaintiff's Title VII claim against the state of Ohio.

After discovery, Defendant filed a motion for summary judgment, asserting that Plaintiff had not established a *prima facie* case of race discrimination under Title VII. Following the filing of Plaintiff's memorandum in opposition to Defendant's motion, the district court granted Defendant summary judgment, finding that Plaintiff had not raised a genuine issue of material fact as to the pretextual nature of Defendant's stated legitimate and nondiscriminatory reasons for terminating Plaintiff's employment. Plaintiff appeals.

### Facts

Plaintiff worked within the Consumer Protection Section of the OAG as a Public Action Line ("PAL") operator. PAL operators receive telephone calls made by Ohio consumers to the Attorney General's office regarding complaints consumers may have against businesses operating in Ohio. PAL operators work part-time, in four hour shifts. PAL operators are covered by the contract between the Attorney General's Office and the Ohio Civil Service Employees Association, which requires newly-hired PAL operators to serve a four month probationary period, during which time the employer evaluates whether to retain the employee for permanent employment.

Plaintiff was hired as a PAL operator on December 18, 1995. During her probationary period, Plaintiff was directly supervised by Loretta Diehl, who had been employed by the OAG in the Consumer Protection Section for fifteen years. In February of 1996, Lisa Davidson became the Division Chief of the Consumer Assistance Unit, and also supervised Plaintiff. Diehl reported to Davidson, who reported to the Section Chief, Helen MacMurray. Within the OAG, recommendations for termination were reviewed by Terri Williams Miller, Director of Human Resources, who made final recommendations to the Chief of Staff, who in turn reported to the Attorney General.

Prior to her midterm probationary review on March 11, 1996, Plaintiff was told by Diehl and Davidson that Plaintiff received too many personal telephone messages. Plaintiff was again reminded about personal telephone calls by Davidson during her midterm probationary review. The written review stated, "[a]n extraordinary number of personal telephone calls have influenced [Plaintiff's] total productivity adversely. She has been counseled regarding this problem but continues to receive non-business telephone calls ... The quality of job performed has also been affected by time spent on non-business telephone calls." (J.A. at 124). Despite these reminders, Plaintiff continued to receive personal calls.

Diehl's evaluation of Plaintiff indicated that Plaintiff's attendance and receipt of personal phone calls were unacceptable. This evaluation was reviewed by Davidson, McMurray, and Miller. Miller independently investigated Plaintiff's actions, and decided not to extend a permanent offer based on Plaintiff's absences and personal phone calls. Plaintiff's employment was terminated on April 12, 1996.

### DISCUSSION

■ This Court reviews a district court's grant of summary judgment *de novo. See DePiero v. City of Macedonia,* 180 F.3d 770, 776 (6th Cir.1999). Summary judgment is appropriate where the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). As the party moving for summary judgment, Defendant bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If Plaintiff, as the non-moving party, presents evidence from which a jury might return a verdict in her favor, summary judgment may not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering Defendant's motion for summary judgment, this Court accepts Plaintiff's evidence as true and draws all reasonable inferences in her favor. *Id.*

■ Plaintiffs relying on indirect evidence in support of a Title VII claim bear the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, as clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), if a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If defendant meets this burden, plaintiff must then show by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

The district court, for purposes of *McDonnell Douglas* analysis, assumed that Plaintiff had established her *prima facie* case of discrimination. The district court then went on to conclude that no genuine issue of material fact existed as to the pretextual nature of Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff. However, given the weakness of Plaintiff's *prima facie* case, our analysis will not follow the district court's assumption that Plaintiff had met her initial burden under *McDonnell Douglas*.

### A.  Prima Facie Case

■ To establish a *prima facie* case, plaintiff must show that: (1) she is a member of a protected group; (2) she was subject to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside of the protected class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Plaintiff may alternatively satisfy the fourth element by showing that she was treated less favorably than similarly-situated non-protected employees. *Id.* at 582–83.

■ Plaintiff's obstacle to establishing a *prima facie* case is the fourth element under *Mitchell*, that she was treated less favorably than similarly-situated non-protected employees. Plaintiff argues she did not make or receive more personal telephone calls than the other employees in her department. Specifically, Plaintiff alleged that Fran Alberti and Diane Silver, two white employees, were not reprimanded for making or accepting personal telephone calls, which numbered one or more a day for each of them. However, even assuming that Alberti and Silver had made or received a comparable number of telephone calls, a defining aspect of Plaintiff's employment situation at the OAG was Plaintiff's status as a probationary employee.

Plaintiff argues that because OAG policy regarding personal telephone calls applied to the entire division under Davidson's supervision, Plaintiff's probationary status should not distinguish her from Alberti and Silver. However, under *Mitchell,* sharing the same supervisor and being subject to the same standards are not sufficient for establishing that non-minority employees are similarly-situated. A plaintiff must also show that the non-minority employees "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583.

Probationary and permanent employees at the OAG experience differentiating circumstances. Probationary employees face separate standards for removal, have no seniority status, receive reviews both in the middle and at the end of their probationary period, and are not covered by the disciplinary procedures applicable to permanent employees.

Case law further challenges a finding that probationary and permanent employees are similarly-situated. *See Herr v. Airborne Freight Corp.,* 130 F.3d 359, 362 (8th Cir.1997)(probationary female employee unprotected by collective bargaining agreement not similarly situated to male employees); *McKenna v. Weinberger,* 729 F.2d 783, 789 (D.C.Cir.1984) (female probationary employee not similarly situated to male permanent employees); *Williams v. Cuomo,* 961 F.Supp. 1241, 1245 (N.D.Ill. 1997), *aff'd.,* 151 F.3d 1035 (7th Cir.1998), *cert. denied,* 525 U.S. 1160, 119 S.Ct. 1070, 143 L.Ed.2d 74 (1999) (no similarly-situated employees to black male who was the only probationary employee).

Significantly, two other OAG employees, Bridgette Wellington and Peter Parady, also African–American, served their probationary period as PAL operators at the same time as Plaintiff. Both Wellington and Parady received favorable evaluations and were retained beyond the probationary period. These favorable evaluations were noted by Miller, also African–American, who made the final recommendation not to retain Plaintiff beyond the probationary period.

Under *Mitchell,* establishing that co-employees worked in the same department, under the same supervisor and performance standards, does not end the inquiry into whether such employees were similarly-situated to Plaintiff. Even if, however, we were to find no differentiating circumstances between Plaintiff and her co-employees Alberti and Silver, and that Plaintiff had established a *prima facie* case of race-based employment discrimination under Title VII, Defendant may shift the production burden back onto Plaintiff by providing a legitimate, nondiscriminatory reason for terminating her employment.

## B. Legitimate, Nondiscriminatory Reason

Assuming Plaintiff had established a *prima facie* case of discrimination, and thereby created a presumption of discrimination. Defendant may rebut the presumption by providing a legitimate, nondiscriminatory reason for the employee's rejection. *McDonnell Douglas,* 411 U.S. at 802. "The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254.

The district court found that Defendant's stated reasons for terminating Plaintiff, making and receiving an excessive amount of personal phone calls, as well as having an excessive number of

absences, were legitimate and nondiscriminatory. Plaintiff does not argue on appeal that these reasons were not legitimate or nondiscriminatory. Rather, Plaintiff argues that they were pretextual. Accordingly, the question becomes whether Plaintiff has raised a genuine issue of material fact as to the pretextual nature of Defendant's proffered reasons for her termination. *See Burdine,* 450 U.S. at 253.

## C. Pretext

■ Plaintiff first argues that the very analysis of whether an employer's proffered reasons for terminating an employee were pretextual necessarily relies on factual credibility determinations upon which it is improper to base an entry of summary judgment, citing *Degnan v. Goodwill Industries of Toledo,* 104 Ohio App.3d 589, 662 N.E.2d 894 (Ohio 1995). However, a defendant's production of a legitimate, nondiscriminatory reason for termination not only rebuts the presumption of discrimination created by a plaintiff's *prima facie* case, but also invites summary judgment review of plaintiff's burden to show pretext. This Court has stated:

> On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry.... The plaintiff ... enjoys the full opportunity to show [defendant's legitimate and nondiscriminatory] reason to be pretextual as part of the third stage of McDonnell Douglas. [However,] a plaintiff may very well lose on summary judgment because she fails to proffer evidence on that ultimate issue.

*Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.2000)(internal quotations omitted). Accordingly, this Court may review whether Plaintiff's proffered evidence creates a genuine issue of material fact as to pretext.

This Court has summarized the requirements for showing pretext in an employment discrimination context as follows: "once the employer has come forward with a nondiscriminatory reason for firing the plaintiff ... plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir.1994). "To make a submissible case on the credibility of [an] employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Id.* at 1084 (citations and internal quotations omitted).

Plaintiff first attempted to show pretext by producing a statement related by Plaintiff's co-worker, Michelle Scales, who was told by Galen Robinson, a supervisor in the Consumer Protection Section, that he witnessed one of Plaintiff's supervisors, either Lisa Davidson or Loretta Diehl, say in regard to Plaintiff's termination: "This has never happened before in the Consumer Protection Section, but we got one."[1] (J.A. at 221).

The district court found that the statement would be inadmissible at trial, and thus could not be considered on summary judgment review under Federal Rule of

---

1. Although Plaintiff's proffered evidence is a statement from a supervisor within the OAG, nevertheless it constitutes indirect evidence because a conclusion of pretext must be inferred from the statement. Direct evidence is defined as "[e]vidence that ... if true ... proves a fact without inference or presumption." BLACK'S LAW DICTIONARY 577 (7th ed. 1999).

Civil Procedure 56(e). "[I]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citations omitted). Specifically, the district court found the statement to be inadmissible hearsay under Federal Rule of Evidence 802.

Plaintiff argued that both Robinson's statement and the statement of Diehl or Davidson should be admissible as representative admissions under Federal Rule of Evidence 801(d)(2). The district court found Plaintiff's proffered evidence to be double hearsay which lacked proper foundation under Rule 801(d)(2).

This Court addressed the issue of double hearsay and admissibility under Rule 801(d)(2) in *Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1081 (6th Cir.1999). In *Moore*, plaintiff Gerald Moore's witness, Marsee, a co-worker, testified that Marsee's brother-in-law, Morris, who was also a co-worker, was told by McCauley, plaintiff's supervisor, that "some bad stuff" was going to happen which Marsee should avoid if he wanted to retain his employment. *Id.*

In *Moore*, plaintiff argued that Marsee's statement was admissible under Rule 801(d)(2) because McCauley considered Morris his agent when making the statement regarding Marsee. Under Rule 801(d)(2)(D), a statement is not hearsay if made by a party's agent concerning a matter within the scope of the agency or employment, made during the existence of the relationship. Each level of hearsay must fall within a Rule 801 exception to be admissible. *Moore*, 171 F.3d at 1081 (citing Federal Rule of Evidence 805).

While this Court in *Moore* found that the second level of hearsay, Morris' statement to Marsee, was admissible under Rule 801(d)(2), the Court stressed that McCauley told Morris to relay his statement to Marsee, thereby illustrating their agency relationship. In this case, Plaintiff offers testimony by co-worker Scales that supervisor Robinson had told Scales of a comment he had overheard from either supervisor Diehl or supervisor Davidson. The agency element in *Moore* is not present in this case. Robinson did not instruct Scales to relay what he had heard to Plaintiff.

Two separate elements further distance the link between the alleged supervisor's statement and Scales: Scales herself could not identify who had made the statement, and no direct statement from Robinson has been made available by Plaintiff. Further, even if Scales' testimony were to be admissible, its probative value would be negligible. After Scales related Robinson's account of the supervisor's statement, Scales added, "I don't know what [the statement] meant. I don't know if they meant, oh, finally we fired somebody. Or I mean I can't tell you what it meant. You would have to ask [Robinson]." (J.A. at 221.) Thus, Plaintiff, three steps removed, offers a statement whose speaker she cannot identify and whose meaning Scales herself cannot discern.

Scales' double hearsay statement is inadmissible under Rule 801(d)(2), and thus inapplicable to our summary judgment analysis under Federal Rule of Civil Procedure 56(e). Moreover, even if admissible, it would test the bounds of reasonableness for a juror to infer pretext from "but we got one," a statement offering no meaning for Scales herself.

In support of her pretext claim. Plaintiff also points to Scales' testimony, as well as her own, on the different treatment by Defendant of black and white employees as to personal telephone calls, as well as Scales' testimony on how Defendant de-

nied Scales promotions, while rapidly promoting a white employee.

Scales stated that African–American, but not white, PAL operators would be reprimanded for tardiness, and that Silver, a white PAL operator, had been promoted to Complaint Specialist, while Scales had not. Scales also stated that she did not know if race had been a factor in either the reprimand or promotion cases. Plaintiff argues that the above evidence suggests, under *Manzer,* that the proffered reasons for Plaintiff's discharge had no basis in fact, did not motivate the adverse employment action, and were insufficient to motivate the adverse employment action.

First, Defendant's primary legitimate and nondiscriminatory reason for discharging Plaintiff, her excessive personal phone calls, was based in fact. From December of 1995 through March of 1996, Plaintiff lived with her four children in a hotel which did not take telephone messages. Plaintiff testified to receiving personal telephone calls at work from her children, people responding to Plaintiff's advertisement seeking an apartment, the father of one of Plaintiff's children, Plaintiff's attorney, an outside agency in connection with one of Plaintiff's children, and a day care center for one of her other children. During Plaintiff's initial probationary period, she received thirty-four incoming calls where messages were taken. Plaintiff's co-workers complained about the number of personal calls she received. The Attorney General Policies and Procedures Manual in effect at the time of Plaintiff's employment stated:

> The Attorney General recognizes that it may be necessary for employees to make or accept a limited number of personal phone calls while at work; however, the frequency and duration of

such personal calls must be kept to a minimum.

(J.A. at 80.)

Second, Plaintiff's personal telephone calls were sufficient to motivate adverse employment action. Analysis of insufficiency normally "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer,* 29 F.3d at 1084.

Plaintiff has not alleged facts of substantially identical conduct by other employees. While Plaintiff alleges white employees Alberti and Silver made or accepted a comparable number of personal phone calls. Plaintiff has not alleged a comparable record of absences, numbering two full weeks during Plaintiff's probationary period, which was also an expressly stated factor in Plaintiff's termination. Further, the OAG policy on personal telephone calls seems particularly relevant for evaluating PAL operators, whose primary responsibility is to answer the telephone. Thus, the question becomes, under *Manzer,* whether Plaintiff has created a material issue of fact as to Defendants' true motivation for discharging Plaintiff.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Scales' testimony, heavily relied on by Plaintiff, does not strengthen Plaintiff's pretext claim. On different treatment in employment-related reprimands, Scales stated:

> But I can't say [that African–American operators receiving more reprimands] was race-related ... I am saying that I was written up and the other operator was not written up. I don't know if it

was because I was black and she was white. I don't know if it was because [the supervisor and operator] were friends. I don't know what it was in regards to. But I know I was the one being reprimanded and the other was not.

(J.A. at 220). On the issue of being passed up for a promotion. Scales stated:

I can say probably [tardiness] was my issue that I did not get the position. I don't know if personnel made the decision or ... just the supervisors. I can't say. I never dug into it. Once I got denied for it, I left it alone.

(J.A. at 221).

On the issue of Plaintiff's termination. Scales stated:

Besides her personal things—and that's what I think [Plaintiff's supervisors] truly looked at, her personal—the things that she was going through personally, [Plaintiff's supervisors] thought was going to be an issue with her job. And that's the only thing that I can see for her termination.... And the only thing I would hear—I would never hear race. All I would hear is about her personal— her personal issues about the telephone calls is the main thing that sticks out in my mind, is personal calls. That is it.

(J.A. at 223).

Plaintiff's primary witness has stated that, in her opinion, the one reason for Plaintiff's termination was Plaintiff's personal situation, which in fact led to Plaintiff's excessive personal telephone calls. Conclusory assertions of discrimination by Plaintiff are insufficient to show a genuine issue of material fact necessary for the denial of summary judgment. *See Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 343 (6th Cir.1993). Even assuming that Plaintiff had made a *prima facie* showing of employment discrimination, her reliance on Scales's testimony does not create a genuine issue of material fact as to whether Defendant's true motivation for not retaining Plaintiff beyond the probationary period was something other than Plaintiff's excessive personal telephone calls and absences.

## CONCLUSION

For the reasons set forth above, the district court order granting Defendant's motion for summary judgment and dismissing Plaintiff's employment discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e is AFFIRMED.