**MIDWEST IMPORTS, LTD.,**
**Plaintiff–Appellant,**

v.

**Les COVAL and Joseph Pieciak & Co.,**
**P.C., Defendants–Appellees.**

No. 95–1184.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1995.

Decided Dec. 12, 1995.

John C. Polales, Chicago, IL, Mark W. Damisch (argued), Daniel J. Arnett, Barclay & Damisch, Chicago, IL, for Midwest Imports Limited, an Illinois corporation.

Michael C. Bruck (argued), D. Kendall Griffith, Thomas Crisham, Michael N. Ripani, Hinshaw & Culbertson, Chicago, IL, for Les Coval, Joseph Pieciak & Company, P.C.

Before CUMMINGS, FLAUM and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff, Midwest Imports, Ltd. ("Midwest"), filed suit against their former accountant, Les Coval, and his accounting firm, Joseph Pieciak & Co., P.C. (collectively, "Coval and Pieciak"), alleging breach of contract and negligence in connection with the 1989 audit of Midwest's financial statements. Midwest claimed that Coval and Pieciak failed to discover and report an internal con-

trol weakness in the accounting department, which enabled a Midwest employee to embezzle $150,000. Coval and Pieciak moved for summary judgment on both counts, and the district court granted their motion. Midwest appeals this decision; we affirm.

## I.

■■■ Generally, on a motion for summary judgment all material facts and all inferences are construed in the light most favorable to the non-moving party. *See Serfecz v. Jewel Food Stores,* 67 F.3d 591, 596 (7th Cir.1995). However, in this case, Midwest violated Northern District of Illinois Local Rule 12(N) when it failed to respond to Coval and Pieciak's statement of uncontested facts, which they submitted pursuant to Local Rule 12(M).[1] Under rule 12(N), a failure to contest the opposing party's 12(M) facts is considered a binding admission of those facts. The district court therefore admitted as true the facts set forth in Coval and Pieciak's 12(M) statement. Midwest does not contest these admissions. Midwest also failed to comply with rule 12(N) by not submitting a separate statement of additional facts that required denial of summary judgment. Midwest simply set forth its additional facts in its memorandum. Due to this deficiency, the district court found the additional facts were not properly before it and should not be considered. As will be discussed infra in section II.A., we find this was an appropriate decision. Accordingly, in reviewing the grant of summary judgment in this case, we "depart from our usual posture of construing all facts in favor of the non-moving party; rather we accept as true all material facts contained in [the moving party's] 12(m) statement." *Johnson v. Gud-*

*mundsson,* 35 F.3d 1104, 1108 (7th Cir.1994). Therefore, the following background is substantially derived from the defendants' statement of uncontested facts and attached exhibits.

In 1989, Midwest, an importer of certain specialty foods, engaged Coval and Pieciak to audit its financial statements for the year ending December 31, 1989. On December 1, 1989, Coval and Pieciak sent a letter to Midwest confirming the details of the engagement. The letter provides in relevant part:

> The purpose of our examination is to express our opinion on the fairness of presentation of the aforementioned financial statements taken as a whole and on their conformity with generally accepted accounting principles.
>
> \*     \*     \*     \*     \*     \*
>
> [The examination] is not specifically designed and cannot be relied upon, to disclose fraud, defalcations or irregularities that may exist.
>
> \*     \*     \*     \*     \*     \*
>
> In connection with our examination, as part of our services, we will submit to you such suggestions and recommendations for improvements of existing systems of internal control, accounting policies and procedures and other related matters which may come to our attention during the course of our work and which we consider appropriate.
>
> \*     \*     \*     \*     \*     \*
>
> Our engagement cannot be relied upon to disclose errors, irregularities, or illegal acts, including fraud or defalcations, that exist.

---

1. Local Rule 12(M) provides that the party moving for summary judgment shall serve and file, in addition to any necessary affidavits and a supporting memorandum of law:
   (3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law....
   Local Rule 12(N) provides that the party opposing summary judgment must serve and file, in addition to any necessary affidavits and a memorandum of law:
   (3) a concise response to the movant's statement that shall contain:

   (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
   (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party.

Nana Kendall, the owner of Midwest, acknowledged her understanding of the engagement, as represented in the letter, by signing and returning the engagement letter.

Les Coval performed the audit field work for the Midwest audit in February of 1990. Under generally accepted auditing standard AU 320,[2] Coval was required to complete a "preliminary phase" of review of Midwest's internal control system in order to obtain a "general understanding" of that system.[3] *See* AU 320.53.[4] The standard clearly provides that "[t]he purpose of the auditor's study and evaluation of internal control ... is to establish a basis for reliance thereon in determining the nature, extent, and timing of audit tests to be applied in his examination of the financial statements." AU 320.05; *see also* AU 320.52.[5] If the auditor can rely on the company's internal controls, he may reduce the extent of substantive testing necessary to express an opinion on the financial statements. The standard acknowledges that the preliminary review *may* "provide a basis for constructive suggestions to clients concerning improvements in internal control," and that these suggestions are "desirable"; however, it emphasizes that "the scope of any additional study made to develop such suggestions is not covered by generally accepted auditing standards." AU 320.06; AU 320.07.

As part of his field work, Coval completed several standard forms relating to Midwest's internal control system. Among them was a "Control Environment" form, the explicit purpose of which (according to the form's preface) is "to gain an understanding of the control environment and assess its overall effectiveness to plan the audit...." In completing the "Control Environment" form, Coval answered "yes" in response to more than twenty inquiries regarding Midwest's control system, including: 1) whether accounting personnel understand the duties and procedures applicable to their jobs; 2) whether management established measures to prevent unauthorized access to, or destruction of, documents, records, and assets; and 3) whether management exercises reasonable control over operations so that there is an absence of crisis conditions in operations or accounting, e.g., well-organized work areas, no unusual delays, adequate documentation for all significant transactions, etc. Coval also filled out an "Engagement Acceptance and Continuation Form" and a "Small Business Evaluation" questionnaire. Nowhere on any of these completed forms is there any indication that Coval identified a reportable internal control weakness.

After completing these forms, Coval decided against relying on Midwest's internal control system to evaluate the fair presentation of Midwest's financial statements. Instead, Coval followed the most conservative approach, assessing the internal control risk at 100% and conducting substantive testing of each material account balance. Accounting standards allow auditors to make this choice once the preliminary review has been completed. AU 320.54 states "[o]n completion of

---

2. *See* CODIFICATION OF ACCOUNTING STANDARDS AND PROCEDURES, Standards of Field Work, AU § 320, *The Auditor's Study and Evaluation of Internal Control* (Am. Inst. of Certified Pub. Accountants 1972).

3. The system of internal accounting control "comprises the plan of organization and the procedures and records that are concerned with the safeguarding of assets and with the reliability of financial records produced by the accounting system." AU 320.52 n. 8.

4. AU 320.53 provides:

The preliminary phase of [the internal control] review should be designed to provide the auditor with a general understanding of the control environment.... An understanding of the control environment should provide the auditor with a general knowledge of such mat-

ters as the organizational structure, the methods used by the entity to communicate responsibility and authority, and the methods used by management to supervise the system, including the existence of an internal audit function, if any.

5. AU 320.52 provides:

The purpose of the review of the [internal control] system is to obtain sufficient knowledge and understanding about the accounting system and the internal accounting control system: (a) to make a determination of whether there are internal accounting control procedures that may provide a basis for reliance thereon in determining the nature, extent, and timing of substantive tests; or (b) to aid the auditor in designing substantive tests in the absence of such reliance.

the preliminary phase of the review, an auditor may conclude that further study and evaluation are unlikely to justify any restriction of substantive tests." Such a conclusion "would cause an auditor to discontinue further study and evaluation of the internal accounting control system and to design substantive tests that do not contemplate reliance on such internal accounting control procedures." AU 320.54. Once an auditor has made the decision not to rely on the internal system to restrict substantive testing, "his documentation may be limited to a record of his reasons for deciding not to extend his [internal control] review." AU 320.55. Coval stated his reason for assessing risk at 100% as "firm policy." He then proceeded to substantively test each material account balance at Midwest in order to reach an opinion regarding the financial statements.

On February 19, 1990, Coval and Pieciak issued its evaluation of the financial statements to Midwest's board of directors and stockholders, concluding that the statements fairly represented the company's financial position. Midwest agrees that Coval and Pieciak's opinion was accurate, i.e., that the statements did fairly represent the financial position of the company. Coval and Pieciak's opinion did not report any internal control weaknesses at Midwest.

At some point after December 31, 1989, James Spillar, an accounts receivable clerk at Midwest, began embezzling checks received from Midwest customers. Spillar apparently continued to embezzle from Midwest until he admitted the wrongdoing to Midwest owner, Nana Kendall, in April of 1991. According to Midwest's pleadings, Spillar performed duties that should have been segregated, but were not. Spillar allegedly had access to cash receipts, recorded cash receipts, and performed collection follow-up. Believing that this "control weakness" enabled the embezzlement to take place, and that Coval and Pieciak should have identified and communicated this weakness as part of their audit, Midwest filed a two count complaint against Coval and Pieciak, claiming breach of contract and negligence.

Following the close of discovery, Coval and Pieciak moved for summary judgment, contending that the undisputed facts demonstrated that Coval and Pieciak did not breach any professional standard. In response, Midwest argued that there remained genuine issues of material fact as to 1) whether Coval and Pieciak attained a general understanding of Midwest's control environment, as required by AU 320, and 2) whether Coval and Pieciak should have become aware of the internal control weakness. In support of its argument, Midwest cited to attached exhibits containing additional facts, including: 1) expert testimony that "it would have taken a blind man to look at the system of internal control for just the amount of time that's required under the planning standard ... to not know that there was a material weakness there ...", 2) expert testimony that Coval and Pieciak violated auditing standard SAS 60,[6] which requires an auditor to communicate reportable internal control weaknesses identified during the course of an audit,[7] and 3) testimony by Coval that he did not specifically observe the internal controls of Midwest or identify any internal control weaknesses.

The district court, accepting as true all of Coval and Pieciak's 12(M) facts and not considering Midwest's additional facts (due to Midwest's 12(N) default), granted summary judgment for Coval and Pieciak. On the record properly before it, the court found that Midwest had offered no evidence establishing any genuine issue of fact as to whether Coval and Pieciak had violated any professional standard by not finding and communicating the alleged internal control weakness.[8]

## II.

On appeal, Midwest argues first, that the district court erred in not considering its

---

6. *See* Codification of Accounting Standards and Procedures, Statement on Auditing Standards No. 60 (Am. Inst. of Certified Pub. Accountants 1988).

7. SAS 60, however, does not obligate an auditor to "search for reportable conditions."

8. The district court also indicated that summary judgment in Coval and Pieciak's favor would have been appropriate *even if* Midwest's additional facts were considered, and therefore the seemingly harsh consequence for violating rule 12(N) actually "deprived Midwest of nothing."

evidence simply because it technically failed to comply with rule 12(N), and second, that even without the additional evidence considered, there remained genuine issues of material fact such that summary judgment should have been denied.

## A.

■ Midwest contends that a technical violation of rule 12(N) should not prevent it from presenting the additional facts that were adequately referenced and supported in its brief.[9] In its view, the district court's response to its default was harsh and "without regard for the equities involved in the case." Midwest argues that because it was not attempting to dispute any of the facts contained in Coval and Pieciak's 12(M) statement, but was only attempting to present additional facts, a sanction in this case does not further the streamlining purpose of rule 12(N). Midwest also claims that this fact distinguishes the instant situation from the numerous cases where we have upheld strict enforcement of rule 12(N).

We have consistently and repeatedly required strict compliance with rule 12(N). *See Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir.1994); *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir.1992); *Wienco, Inc. v. Katahn Assocs., Inc.,* 965 F.2d 565, 567 (7th Cir.1992); *Appley v. West,* 929 F.2d 1176, 1179 (7th Cir.1991); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1103–04 (7th Cir.1990). We have found that the "district court's significant interest in maintaining the integrity of its calendar" and in "streamlining" its caseloads justifies this strict position. *See Johnson,* 35 F.3d at 1108 (quoting *Wienco,* 965 F.2d at 567). We see no meaningful reason to depart from this line of authority in the instant case simply because Midwest seeks relief from the second requirement of rule 12(N) (filing a separate statement of additional facts), while in the cases cited the parties generally sought relief from the first requirement of rule 12(N) (that parties specifically controvert the other side's facts).

First, we do not agree with Midwest's suggestion that the purposes motivating rule 12(N) would not be furthered by its application in this type of case. The second requirement of 12(N), just like the first, serves to maintain and enhance the efficient flow of the district court's docket. This is amply demonstrated by this case. Even if Midwest did not wish to controvert any of Coval and Pieciak's 12(M) facts, we cannot doubt that it would have been easier for the district court, and therefore more efficient, if Midwest had clearly set forth this position to the court in a 12(N) statement, rather than forcing the court to come to this conclusion after combing and comparing the submitted memoranda and exhibits. Similarly, we are confident that it would have been helpful to the district court for Midwest to explicitly and succinctly set forth the additional facts that it believed required denial of summary judgment, rather than force the court to glean them from its memorandum and exhibits. Moreover, even if the purposes of 12(N) are not furthered to a great extent in every case, it is a reasonable judgment on the part of ·the district court that strict, consistent, "bright-line" enforcement is essential to obtaining compliance with the rule and to ensuring that long-run aggregate benefits in efficiency inure to district courts.

We also find it insignificant that the rule does not explicitly set forth the consequences of failing to provide a statement of additional facts, as it does for failing to controvert the opposing party's 12(M) facts (i.e., admission of those facts). The action the district court chose in this case—not considering the additional facts—was not outside its discretion in interpreting its own local rules. As we stated in *Bell, Boyd & Lloyd:* "[a] local rule of a federal district court is written by and for district judges to deal with the special problems of their court, and we are disposed therefore to give a district judge's interpretation of his court's local rules ... considerable weight." 896 F.2d at 1101; *Schulz,* 965 F.2d at 519. The response by the district court flowed logically from the requirements of

---

9. Midwest does not attempt to argue that the district court erred in admitting the uncontested facts in Coval and Pieciak's 12(M) statement. In fact, Midwest claims it never wished to contest these facts.

rule 12(N) and was a valid exercise of its discretion.

Rule 12(N) is straightforward and clear; it requires each party opposing a motion for summary judgment to file (1) a response to each numbered paragraph in the moving party's statement, and (2) a statement of any additional facts that require denial of summary judgment. The rule therefore provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court. Midwest chose not to employ these means, instead presenting the facts in a way it believed adequate. However, as the district court noted, it is not the parties prerogative to determine when a rule can be satisfied by other than what the rule requires. Hence, Midwest must suffer the consequences, harsh or not, of its default.

### B.

■ Midwest next contends that even if their additional facts are not considered, and the only evidence in the record is that presented by Coval and Pieciak, there remain genuine issues of material fact that should prevent summary judgment. We review a district court's grant of summary judgment de novo. *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 596 (7th Cir.1995). Summary judgment is appropriate when the pleadings and supplemental materials present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To survive a defendant's motion for summary judgment, the plaintiff may not simply rest on its pleadings; the plaintiff must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Serfecz,* 67 F.3d at 596; *Greater Rockford Energy & Technology Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994); *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. Generally, we view the facts in the light most favorable to the non-moving party; however, because Midwest did not acceptably present any facts, we consider only the evidence presented by Coval and Pieciak in their 12(M) statement and supporting exhibits. *See Johnson,* 35 F.3d at 1108.

■ The parties agree that Midwest's contract and negligence claims both rest on a determination of whether Coval and Pieciak breached any professional auditing standard in performing the 1989 audit.[10] Midwest, in order to forestall summary judgment, must therefore identify evidence in the record that raises an issue of fact as to whether Coval and Pieciak breached a professional standard by failing to discover and report the alleged internal control weakness. Midwest fails in this endeavor for several reasons.

First, the underlying factual basis of Midwest's claims is that Spillar's combination of duties created an internal control weakness that should have been reported. Yet there is no evidence in the record that supports the conclusion that Spillar actually performed an improper combination of duties. The only document to which Midwest directs our attention is its pleading entitled "Amended Motion to Vacate Dismissal," which states in paragraph nineteen: "Spillar had access to cash receipts, recorded cash receipts and performed collection follow-up." As we stated above, however, Midwest cannot rely on its pleadings alone to survive summary judgment. Midwest points to no affidavits, deposition testimony, interrogatory answer, or admission that supports the conclusion that Spillar actually performed the alleged combination of duties. Therefore, there is no evidence that an internal control weakness actually existed at Midwest. If no internal control weakness existed, then Coval and Pieciak could not have violated any standard of care by not finding and reporting this "weakness" to Midwest.

Second, even if there was proper evidence that Spillar performed duties that should have been segregated, the evidence does not create a genuine issue of material fact as to

---

**10.** Both parties agree with the proposition that a contract for professional accounting services implies that the accountant will satisfy professional standards of care. *Matter of Hawaii Corp.,* 567 F.Supp. 609, 630 (D.Haw.1983).

whether Coval and Pieciak violated any professional standard of care by not finding and reporting this weakness. Midwest claims that Coval and Pieciak violated professional standards SAS 60 and AU 320. SAS 60 requires the auditor to report any significant internal control weakness identified during an audit. There is no evidence, however, that Coval identified any internal control weakness during his audit. On the contrary, the Control Environment form and several other forms completed by Coval indicate that no such weakness was found, i.e., there was nothing SAS 60 required him to report. Under SAS 60, the "auditor is not obligated to search for reportable conditions." Therefore, the evidence in the record fails to demonstrate that Coval and Pieciak violated SAS 60.

There is also no issue of fact as to whether Coval and Pieciak violated AU 320. The stated purpose of AU 320 is to determine if the substantive testing necessary to express an opinion on the financial statements can be restricted based on the reliability of the company's internal control system. *See* AU 320.05; AU 320.52. The ultimate goal of AU 320 is to reach an accurate opinion of the financial statements; incidental identification of any internal control weakness is merely a "desirable" by-product, not governed by the standard. *See* AU 320.06; AU 320.07. Compliance with AU 320 should be analyzed in light of this limited purpose.

Coval and Pieciak's evidence supports the conclusion that Coval gained the general understanding of Midwest's control system required by AU 320.53. Coval completed three forms assessing different aspects of Midwest's control environment, one of which is used by professionals in the field explicitly to "gain an understanding of the control environment and assess its overall effectiveness to plan the audit...." On appeal, Midwest essentially admits that Coval and Pieciak achieved the general understanding required, by stating that Coval "understood completely Midwest's control environment."[11]

After gaining a general understanding of Midwest's control system, Coval decided against relying on the system to restrict substantive testing. Instead, he assessed the control risk at 100% and substantively tested each material account balance. AU 320.54 specifically allows auditors to choose this course. The auditor need only document his reason for not relying on the internal control system. AU 320.55. Coval stated his reason as "firm policy." Based on the substantive tests performed, Coval reached the opinion that Midwest's financial statements fairly presented the financial position of the company. Midwest admits that this opinion was accurate. Therefore, the evidence leads to the conclusion that Coval and Pieciak methodically followed the procedures outlined in AU 320 and fulfilled the purpose behind the standard. Thus, there is no genuine issue of fact as to whether Coval and Pieciak complied with AU 320.

Finally, Midwest appears to argue that Coval's numerous findings regarding Midwest's control environment (as evidenced by the forms completed by Coval) reveal that Coval went *beyond* a mere preliminary review of the control system, and that this creates an issue of fact as to whether Coval should have found the evident weakness. However, since no professional auditing standard requires this "extra" review, the quality of any such review could not result in a breach of a professional auditing standard. And since Midwest admits that its claims depend upon showing a breach of a specific professional standard, this argument must fail. In addition, there is no evidence that the review conducted, whether preliminary or something more, would have revealed the alleged control weakness.

### III.

In conclusion, the evidence properly in the record fails to create a genuine issue of fact as to whether Coval and Pieciak violated any professional auditing standard. Hence, Coval and Pieciak have demonstrated that they are entitled to judgment as a matter of law

**11.** We note that Midwest made the opposite argument to the district court. In that court Midwest argued that Coval and Pieciak did not gain

the general understanding required by AU 320. Apparently, it has abandoned this argument.

on both Midwest's contract and negligence claims. The judgment of the district court is therefore AFFIRMED.