NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 23, 2007
Decided March 1, 2007

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2436

| | |
|---|---|
| OMAR MMUBANGO,<br> *Plaintiff-Appellant*,<br><br>  *v.*<br><br>MICHAEL O. LEAVITT,<br>Administrator, United States<br>Environmental Protection Agency,<br>Region 5,<br> *Defendant-Appellee*. | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division<br><br>No. 04 C 4107<br><br>Ruben Castillo,<br>*Judge*. |

**ORDER**

Omar Mmubango applied and interviewed for a position as a chemist with the Chicago regional office of the United States Environmental Protection Agency ("EPA"), but he was not selected for the job. Mmubango brought suit against the EPA Administrator, alleging that he was not hired because of his race and national origin, and that EPA retaliated against him, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court granted summary judgment to EPA because Mmubango failed to show that EPA's stated non-discriminatory reasons for not hiring him—namely his poor written communication

skills and his misrepresentation about the reason for leaving his prior employment—were pretextual.  We affirm.

Mmubango submitted an application to EPA in response to a vacancy announcement for a chemist position in the Chicago regional office.  Among other basic requirements, the job announcement specified that candidates have a science or engineering degree that included 30 semester hours in chemistry and 6 semester hours of physics, or a combination of education and experience, including coursework equivalent to that specified above plus appropriate experience or additional education.  In addition, the job required one year of specialized experience.  The job announcement specified that applications would be assessed based on various knowledge, skills, and abilities, including the "[a]bility to communicate effectively, both orally and in writing."

The U.S. Office of Personnel Management provided George Hamper—a Section Chief in the Enforcement and Compliance Assurance Branch of EPA's Waste, Pesticides and Toxics Division—with a list of the qualified applicants and their applications, and instructed him to select one of the top three candidates. Mmubango, a native of Kenya who is black, was ranked first, followed by Dr. John Parks and Thomas Schuster, respectively (both white citizens born in the United States).  Hamper interviewed all three candidates.

Mmubango's application consisted of a three-page resume that contained numerous misspellings and grammatical errors.  In addition to describing generally his educational and employment history, the resume specified that Mmubango attended high school in Kenya and has United States citizenship.  Shortly after interviewing Mmubango, Hamper contacted Bob Dullinger, Mmubango's prior supervisor at the Minnesota Pollution Control Agency ("MPCA").  Dullinger stated that he did not certify Mmubango for employment beyond MPCA's six-month probationary period, but that he could not provide further information because Mmubango filed two lawsuits over the matter, one of which was not yet resolved. This was inconsistent with Mmubango's assertion that he left MPCA because he planned to return to school and did not want to be a state government employee subject to six months' probation.

One week after interviewing Mmubango, Hamper wrote a "file memorandum" stating that he found Mmubango's resume to be "incomplete, unclear, and poorly written in general," and that it had "13 spelling mistakes as well as numerous grammar, punctuation and capitalization errors."  The memorandum also noted that Mmubango's resume did not make clear that he was employed in temporary positions through an employment agency, incorrectly named a prior government employer, and omitted the names of supervisors, including Dullinger.  Finally, the memorandum noted that Hamper's conversation with

Dullinger raised concerns that Mmubango had not been entirely forthright about the circumstances behind his departure from MPCA. In the end, Hamper hired Parks, the second-ranked candidate, for the chemist position.

After the EEOC issued a right-to-sue letter, Mmubango sued EPA in federal court for unlawfully discriminating against him based on his race and national origin and for retaliating against him for filing a discrimination lawsuit against his prior employer, MPCA. The district court granted EPA's motion for summary judgment, determining that, although Mmubango established a prima facie case of race and national origin discrimination, he failed to show that EPA's legitimate, non-discriminatory reasons for not hiring him were pretextual. Specifically, the court found that Parks (the candidate who was hired) had a Ph.D. in chemistry, whereas Mmubango had not yet earned his B.S. in chemistry, and that Parks's application was easier to read and contained fewer errors than Mmubango's resume. Thus, the court concluded, Hamper could have genuinely believed that Parks was the better candidate for the job. The court also concluded that Mmubango presented no evidence that EPA's decision not to hire him was retaliation for his pending lawsuit against MPCA.

On appeal, Mmubango challenges the district court's determination that he failed to show that EPA's decision not to hire him was a pretext for race and national origin discrimination and retaliation for filing a discrimination claim against his prior employer. He presents numerous arguments, none of them meritorious.

Mmubango first argues that he established pretext based on alleged flaws in the hiring process. Specifically, he contends that EPA's justification for not hiring him is belied by the fact that Hamper (1) contradicted himself concerning the adequacy of Mmubango's oral communication skills; (2) did not question Mmubango or Dullinger about Mmubango's writing skills; and (3) did not write a memorandum explaining his decision not to hire the other candidate who was not selected.

The focus of a pretext analysis is whether the employer honestly believed its stated reason for making the challenged employment decision. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006). Pretext is not a mere "business error" but rather "a lie or deceit designed to cover one's tracks." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005). Here, even if true, none of Mmubango's allegations shows that Hamper was insincere in his belief that Mmubango was less qualified for the position based on his poorly written resume, which Hamper found to be riddled with misspellings, grammatical errors, omissions, and confusing and misleading statements.

Mmubango next argues generally that the district court erred because he was the better qualified candidate for the position. For example, he contends that his first-place ranking on OPM's list of eligible candidates proves that he was the superior candidate. He also asserts that his effective writing skills are established by his error-free thank-you letter to Hamper and the fact that he utilized his writing skills effectively in previous jobs. Mmubango further argues that Parks had inferior employment and educational qualifications, although the record belies this argument. Indeed, Mmubango fails to acknowledge that Parks had thirty years of relevant work experience, and he erroneously asserts that Parks was awarded a "doctorate in philosophy," when Parks's academic transcript shows that he received a Ph.D. in chemistry. Regardless, the mere fact that Mmubango disagrees with EPA's assessment of his skills is insufficient to establish that EPA did not honestly believe its assessment to be correct. *See Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 812 (7th Cir. 2005). Nor is it the court's role to second-guess an employer's business judgment about an applicant's qualifications. *See Cardoso*, 427 F.3d at 435–37 (Title VII does not empower the court to impose merit selection programs or to punish employers for business decisions alone).

Mmubango next takes issue with the district court's conclusion on his retaliation claim. The court found that Mmubango established a prima facie case of retaliation but that, like his discrimination claim, it failed on the pretext prong. Specifically, the court found that Mmubango could point to no evidence that Hamper knew he had filed a discrimination lawsuit against his prior employer, nor did Hamper's minimal knowledge of the pending lawsuit establish that his legitimate, non-discriminatory reasons for not selecting Mmubango were a lie.

Mmubango argues that the district court erred because the short period of time between Hamper's conversation with Dullinger and Hamper's decision not to hire him is evidence of pretext. He also asserts that Hamper's failure to return his phone calls after speaking with Dullinger (and after being pleasant to Mmubango during the interview) is proof of retaliatory animus.

As with a discrimination claim, when the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to offer a legitimate, non-discriminatory justification for its decision, and the plaintiff then must show that the justification was pretextual. *Cichon*, 401 F.3d at 812. Title VII also bars an employer from retaliating against someone for making or supporting a charge of discrimination against a different employer. *See Flowers v. Columbia Coll. Chicago*, 397 F.3d 532, 533–34 (7th Cir. 2005).

Mmubango points to no evidence that EPA decided not to hire him because he had brought a discrimination lawsuit against MPCA, nor does he offer any new arguments to refute EPA's non-discriminatory justifications for its hiring decision.

Mmubango does not assert that Hamper knew the nature of Mmubango's pending lawsuit against MPCA, and there is no evidence that Hamper knew it to be a discrimination suit. That Hamper failed to return Mmubango's phone inquiries and made his hiring decision shortly after speaking with Dullinger alone does not create an inference that Hamper's hiring decision was motivated by retaliatory animus. Mmubango's argument rests entirely on his self-serving assertion that Hamper is not believable, but this is insufficient to establish pretext without some affirmative evidence that Hamper lacks credibility. *See Cichon*, 401 F.3d at 814–15.

AFFIRMED.